UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JACK WILLIAMS,

        Plaintiff,

                                                      Case No. 2:16-CV-8

v.                                                      HON. R. ALLAN EDGAR

JEFF WOODS, et al.,

        Defendants.
_____/

## OPINION

        Plaintiff Jack Williams, an inmate currently confined by the Michigan Department of Corrections (MDOC), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Jeff Woods, C. Horton, D. Isard, M. McLean, D. Durant, Unknown O'Brien, S. Thompson, D.P. Mansfield, B. Butler, R. Butch Greely, Unknown Watson, J. McCollum, Unknown Ormsbee, Unknown Volick, Unknown King, S. Straka, Unknown Eicher, Unknown Conners, Unknown Wink, Unknown Taylor, and J. Oja. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Woods, Horton, Isard, McLean, Durant, McCollum, O'Brien, Thompson, Butler, Greely,

Ormsbee, Volick, King, Straka, Eicher, Oja, and Taylor. The Court will order service of the complaint on Conners, Pawley, Wink, Mansfield, and Watson only with regard to Plaintiff's Eighth Amendment claim.

## DISCUSSION

I. Factual Allegations

Plaintiff filed a 347 paged complaint with exhibits that the Court has attempted to read with as much accuracy as possible. Plaintiff raises numerous claims of retaliation, conspiracy to retaliate, and due process violations by Defendants from 2014 and 2015.

On February 12, 2014, Defendant Thompson issued Plaintiff an MDOC Notice of Risk Classification, which stated that Plaintiff was classified as a "High Assaultive Risk" based on being convicted of murder and having been found guilty of a serious misconduct for fighting in 1996. PageID.165.  After receiving this notice, Plaintiff requested an evidentiary hearing on the issue of his classification status. PageID.12.  Before the hearing, Plaintiff requested certain forms of evidence, but his requests were denied by Defendants McCollum and O'Brien. PageID.12. In addition, Defendants McCollum and Durant told Defendant Thompson that Plaintiff was making many requests for evidence, and Defendant Thompson told them that if Plaintiff filed another similar type of request, he would make sure Plaintiff was transferred to URF East (Max). PageID.13. Defendants McCollum and Durant told Defendant Thompson's message to Plaintiff. Defendant O'Brien was the hearing officer for Plaintiff's risk classification hearing. In his administrative hearing report, Defendant O'Brien upheld Plaintiff's "high assaultive risk" classification. PageID.166.

On April 25, 2014, Defendant Thompson wrote a class II misconduct ticket

against Plaintiff for disobeying a direct order. PageID.115. Plaintiff was found guilty and appealed the decision. PageID.116-117. His appeal was denied because there were no violations of policy or procedure during the hearing. PageID.117.

On July 10, 2014, Defendant Thompson told Defendant Straka to write a retaliatory class III misconduct ticket against Plaintiff for violating posted food service rule #1, which Defendant Straka did. PageID.14-15, 130. Defendant Greely held the hearing on the misconduct ticket. He found Plaintiff guilty of the misconduct and imposed a sentence of two days top lock against Plaintiff. PageID.14-15, 131. Plaintiff appealed the decision and the appeal was reviewed by Defendant Isard. PageID.14. Defendant Isard vacated the decision. PageID.14, 15. On August 1, 2014, Defendant Greely heard that the sentence he imposed against Plaintiff was vacated, and then told Plaintiff that regardless of the sentence being vacated, he was still going to order Plaintiff to two days of top lock. PageID.14. Defendants Greely, Thompson, and Straka conspired against Plaintiff when placing him on top lock in retaliation for Plaintiff appealing the hearing decision. PageID.14.

Plaintiff filed a grievance against Defendant Greely for making Plaintiff do top lock for two days despite this sentence being vacated by Defendant Isard. PageID.18, 133. The grievance also stated that Defendant Greely threatened to place Plaintiff in administrative segregation. PageID.18. The grievance was denied by Defendant Thompson, however, because Plaintiff did not have to do two days of top lock for this misconduct since it was vacated on appeal. PageID.133.

On August 5, 2014, Plaintiff was sent to URF East based on orders from Defendant Thompson. Defendant Thompson stated he was moving Plaintiff there because of bed

-3-

space needs. PageID.14-15. Plaintiff was placed on more restrictive status after his transfer. PageID.19. Plaintiff filed a grievance because he wanted to have a hearing before being transferred. PageID.19, 205. This grievance was rejected at Step I by Defendant McLean, and at Step II by Defendant Woods since Plaintiff was found guilty of the misconduct. PageID.19.

On August 9, 2014, Plaintiff was issued a misconduct ticket for "Sexual misconduct." PageID.23. Plaintiff was found not guilty. PageID.23.

On August 19, 2014, Defendant Eicher told Plaintiff that Plaintiff would "pay" for challenging one of Defendant Pawley's misconduct tickets. PageID.26. Defendant Eicher then filed a misconduct ticket against Plaintiff for being out of place. PageID.221. Defendant Mansfield was the hearing officer on that ticket, and Defendant McCollum was the hearing investigator. PageID.222. Plaintiff was found guilty of the misconduct and was sentenced to five days of top lock. PageID.222.

On August 29, 2014, Defendant Conners retaliated against Plaintiff by issuing him a misconduct ticket for losing a room key. PageID.26. On August 30, 2014, Defendant Eicher reviewed the ticket and concluded that the restitution owed was $25.00. PageID.26. Then, at a hearing which Plaintiff was not permitted to attend, Defendant Butler changed the restitution from $25.00 to $78.50. PageID.26-27. Plaintiff was never informed that a hearing was taking place on the issue of the lost key. PageID.28.

On September 6 and 7, 2014, Plaintiff was issued a misconduct ticket for contraband and destruction/misuse of property by Defendant Pawley. PageID.28. Plaintiff claims that the hearings on these tickets were done by Defendants Mansfield and Butler. Plaintiff asserts that they did not conduct the hearing according to MDOC policy. PageID.28-29. Based on the

outcome of the hearings on these tickets, Defendant Pawley seized Plaintiff's shoes, sweatshirt, watch, headphones, and all other property because it was altered or did not have his prisoner number on them. PageID.31-32.

On October 15, 2014, Defendant Pawley issued a retaliatory misconduct ticket against Plaintiff for "possession of forged documents." PageID.23, 144. Specifically, Plaintiff was in possession of hearing reports and a daily itinerary that were not his. PageID.176. Defendant Mansfield was the hearing officer on the ticket, and Defendant Durant was the hearing investigator. PageID.145. Defendant Mansfield conspired with Defendant Pawley when he wrote the hearing report on this misconduct ticket. PageID.23. Defendant Mansfield would not let Plaintiff attend the hearing. PageID.24. Plaintiff was found guilty of the misconduct. PageID.48, 145. After the hearing, Plaintiff asked Defendant McCollum for the evidence that Defendant Mansfield relied upon during this misconduct hearing. PageID.49. Plaintiff was denied the ability to appeal this hearing decision. As a result, Plaintiff filed a grievance. PageID.49.

After this misconduct hearing, Plaintiff received an increased management point by Defendant Durant for this conviction. PageID.33. Plaintiff alleges that Defendant Durant did this because he was conspiring with Defendant Thompson to keep Plaintiff in a more restrictive classification status. PageID.34. Defendant Durant also issued Plaintiff fifteen days top lock. PageID.33. Plaintiff appealed the decision, but his appeal was denied. PageID.146. Plaintiff filed a grievance regarding the alleged unfairness of his misconduct hearing, but it was denied at Step I by Defendant McLean for being a non-grievable issue. PageID.24. At step II, Defendant Woods denied the grievance, too. PageID.33.

On October 24, 2014, Defendant Wink issued Plaintiff a misconduct ticket for

possession of dangerous contraband and possession of stolen property. PageID.46. Before the hearing, Plaintiff wrote questions for Defendant Ormsbee to answer, dated October 29, 2014. PageID.46, 181. Defendants Ormsbee and McLean provided handwritten responses to Plaintiff's questions. PageID.46-47. In one answer, they stated that they improperly allowed Defendant Pawley to amend Defendant Wink's charges against Plaintiff to include the charge of possession of stolen property or theft. PageID.46-47, 181. At the misconduct hearing, Defendant Wink testified that he found a tattoo needle and grease pencil in Plaintiff's area. PageID.46. Plaintiff objected to the charges both orally and by way of a written statement. PageID.46.

On October 26, 2014, Plaintiff received a copy of the hearing report relating to the forgery misconduct conviction, and within the report there was also a charge for disobeying a direct order. PageID.50. Plaintiff was not given notice of this second charge for disobeying a direct order, so Plaintiff wrote a grievance for a violation of an MDOC policy. PageID.50. The grievance was determined non-grievable at Steps I and II. PageID.50.

On October 30, 2014, Defendant Volick wrote a retaliatory misconduct ticket against Plaintiff for disobeying a direct order (which was pretext for Plaintiff's choice to challenge the dangerous contraband ticket). PageID.34-35, 56, 161. Plaintiff could not call witnesses or be present at the hearing, and he could only provide a written statement. PageID.35. Defendant Mansfield was the hearing officer on this ticket, and Defendant Durant was the hearing investigator. PageID.162. Plaintiff was found guilty of the misconduct, and was sentenced to five days of top lock and fifteen days of lost privileges. PageID.162. Plaintiff was denied his right to appeal the hearing decision. PageID.35. On November 28, 2014, Plaintiff was denied a right to be heard during an administrative hearing conducted by Defendant Taylor.

PageID.26.

From November 29 through December 2, 2014, Defendants Conners, Pawley, Wink, Mansfield, and Watson conspired against Plaintiff when they placed a known sexual predator in Plaintiff's cell with the intent that this prisoner would harm Plaintiff. PageID.58. As the door to Plaintiff's cell was being locked on November 29, 2014, Defendant Pawley asked Plaintiff if he had any petroleum jelly, and Defendant Conners laughed. PageID.64. Plaintiff was raped by the prisoner on the night of November 30, 2014. PageID.66. Plaintiff filed a grievance, but it was rejected for being vague and raising non-grievable issues. PageID.58, 92. Plaintiff asserts that these Defendants failed to protect him from harm. PageID.70.

On December 4, 2014, Defendant Conners issued a class II misconduct ticket against Plaintiff for being out of place. PageID.35, 57, 184. When Plaintiff asked the hearing officer (Defendant Mansfield) to review the video of the incident, Defendant Mansfield said that "No (Fags) should be allowed to breath." PageID.35. Plaintiff could not be present or present witnesses at the hearing. PageID.35. However, Plaintiff was found not guilty of the misconduct. PageID.185.

On April 2, 2015, Defendant Oja wrote a misconduct ticket against Plaintiff for being out of place. PageID.36, 57, 153. The hearing was conducted without Plaintiff or his witnesses, and only with Plaintiff's written statement. PageID.37. Plaintiff contended, through his written statement, that he was not located where Defendant Oja said he was on the date of the alleged violation. PageID.37. Defendant Watson was the hearing officer. PageID.154. After reading Plaintiff's statement of defense, Defendant Watson ripped it up and said, "No fags win." PageID.37. Plaintiff was found guilty of the misconduct. PageID.154. Plaintiff appealed the

decision, but his appeal was denied as there was no violation of policy or procedure during the misconduct hearing. PageID.155.

On May 4, 2015, Plaintiff filed a grievance against Defendants McLean and Durant, stating that they have rejected many of his grievances for improper reasons and not in accord with MDOC policies and procedures. PageID.140. The grievance was rejected, and Plaintiff appealed. PageID.140. Defendant Woods affirmed the denial of Plaintiff's grievance. PageID.140-141.

On June 1, 2015, Defendant Pawley issued a class II misconduct ticket against Plaintiff for insolence. PageID.103. Defendant Thompson was the hearing officer on the ticket, and Defendant Durant was the hearing investigator. PageID.104. Plaintiff was found guilty of insolence on June 10, 2015. PageID.104. He was sentenced to fifteen days of lost privileges. PageID.104.

On June 12, 2015, Defendant Pawley testified against Plaintiff during a misconduct hearing pertaining to insolence. PageID.58-59. Plaintiff was not permitted to attend the hearing, provide a statement, or present witnesses. PageID.59. In addition, Defendant Thompson threatened Plaintiff before the hearing and said "If [Plaintiff] did not 'plead guilty' [his] no good 'dick sucking black-ass was going to max." PageID.59. Plaintiff pleaded not guilty and was subsequently ordered to transfer to URF East and to be placed on a more restrictive status. PageID.59. Plaintiff asserts that this transfer was retaliatory. PageID.59. Plaintiff was immediately transferred back to URF West, however, that same day. PageID.59.

On June 15, 2015, Defendant King wrote a misconduct ticket against Plaintiff for a rule violation taking place in URF East. PageID.16. On June 19, 2015, Defendant Thompson

conducted a hearing on this ticket. PageID.60.  At the hearing Plaintiff indicated that this ticket could not be true because he was housed in URF West at the time of the alleged violation. PageID.16. Plaintiff was found guilty, and he was sentenced to fifteen days of top lock. PageID.60.  Plaintiff appealed the decision.  PageID.16. During his appeal, he asked Defendants Thompson and Isard for a record of the hearing, but he was not provided with that record. PageID.16. On appeal, Defendant Isard stated that the sentence imposed by the hearing officer was not reviewable. PageID.17. Plaintiff asserts that Defendants Isard, Horton, Thompson, and Mansfield conspired to deny his appeal. PageID.17. Plaintiff filed a grievance relating to this ticket and the fact that Defendants Woods, Isard, McLean, and Thompson conspired against him. PageID.60.

Based on these occurrences, Plaintiff alleges that Defendants violated his constitutional rights.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

### A. Immunity

Plaintiff asserts that while acting in their official capacity as hearing officers, Defendants O'Brien, McCollum, Greely, Butler, Mansfield, Durant, Watson, and Isard improperly found him guilty of misconduct tickets, and they failed to conduct the hearings according to MDOC policies and procedures. Hearing officers, when acting in their official capacity, are functionally comparable to a judge. *See Wright v. Rockett*, 815 F.2d 81, at *1 (6th Cir. 1987). As a result, hearing officers are absolutely immune from § 1983 liability. *Id.*; *see also Shelly v. Johnson*, 849 F.2d 228 (6th Cir. 1988); *Proctor v. Applegate*, 661 F. Supp. 2d 743, 764 (E.D. Mich. Sept. 30, 2009). Therefore, to the extent that Plaintiff raises claims against Defendants O'Brien, McCollum, Greely, Butler, Mansfield, Durant, Watson, and Isard for their actions as hearing officers, these claims are dismissed.

### B. Supervisory Liability

Plaintiff asserts that Defendants McLean and Woods retaliated against him by arbitrarily denying many of Plaintiff's grievances. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon

information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As a result, Plaintiff's claims against Defendants McLean and Woods are dismissed for failure to state a claim.

### C. Eighth Amendment

Plaintiff claims that Defendants Conners, Pawley, Wink, Mansfield, and Watson had a duty to protect him, under the Eighth Amendment, from harm and failed to do so when they placed a known sexual predator in Plaintiff's cell, which lead to Plaintiff being raped. The Court concludes that Plaintiff's allegations are sufficient to warrant service of this Eighth Amendment claim against Defendants Conners, Pawley, Wink, Mansfield, and Watson.

### D. Conclusory Allegations

Plaintiff claims that the following Defendants, in a conspiracy with one another, retaliated against him when they filed misconduct tickets against him, transferred him to another unit, and improperly found him guilty of several misconduct tickets: Defendants Thompson, Volick, Oja, Conners, King, Eicher, Pawley, Wink, O'Brien, McCollum, Straka, Mansfield, Butler, Durant, Watson, Greely, Isard, and Taylor.

Plaintiff's allegations of a conspiracy between all of the Defendants at varying times throughout 2014 and 2015 are conclusory and speculative. His allegations, even when viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers/Defendants. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. Rather, he relies entirely on a highly attenuated inference from the mere fact that he has

been disciplined by or subjected to objectionable treatment by a variety of different prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy against Defendants.

### E. Retaliation

Plaintiff raises several retaliation claims against Defendants Thompson, Volick, Oja, Conners, King, Eicher, Pawley, and Wink. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

*i. Defendant Thompson*

Plaintiff raises several claims of retaliation against Defendant Thompson in violation of Plaintiff's First Amendment rights. Plaintiff claims that Defendant Thompson retaliated against him by: (1) classifying Plaintiff in the "High Assaultive Risk" category, and threatening to transfer Plaintiff to "max" if he filed more evidentiary requests before his classification hearing, (2) writing a class II misconduct ticket against Plaintiff for disobeying a direct order, (3) making Defendant Straka write a misconduct ticket against Plaintiff, (4) transferring Plaintiff to URF East and putting him on a more restrictive classification status, (5) and threatening to transfer Plaintiff to "max" if he did not plead guilty to a misconduct ticket.

While Plaintiff does not explicitly state that he engaged in protected conduct before each of these alleged instances of retaliation, it can be inferred from his 347 page complaint (to which he attached many grievances) that Plaintiff is asserting that Defendant Thompson retaliated against him due to Plaintiff's grievance practices. Because filing grievances is constitutionally protected conduct for purposes of a First Amendment retaliation claim, Plaintiff has satisfied the first prong of his retaliation claims against Defendant Thompson. *See Smith*, 250 F.3d at 1037 (filing prison grievances is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation).

In addition, to the extent that claims (1), (4), and (5) allege that Defendant Thompson threatened to transfer Plaintiff to "max" (or did transfer him) and placed him in a higher classification status, these threats satisfy the "adverse action" prong of his retaliation claim. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of

deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Here, threatening to transfer someone to a higher classification status and actually transferring that person could deter an ordinary person from filing grievances in the future. As such, Plaintiff satisfied the second prong of claims.

However, with regard to claims (2) and (3), Plaintiff has failed to satisfy the second prong of his retaliation claim pertaining to adverse actions. This is because Plaintiff was found guilty of those two misconduct tickets. *See* PageID.14-15, 116-117, 131. A prisoner's claim that he was falsely accused of a misconduct ticket is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action); *Burton v. Rowley*, 234 F.3d 1267, at *2 (6th Cir. 2000) (unpublished) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'")). As a result, Plaintiff's claims (2) and (3) against Defendant Thompson are dismissed.

Upon review of claims (1), (4), and (5) under the third retaliation prong, it is clear that Plaintiff has not established the requisite causal link between his protected conduct and the adverse action to maintain a cause of action. Plaintiff merely asserts that he filed grievances around the same time that Defendant Thompson threatened to have Plaintiff transferred (or did have Plaintiff transferred) or placed in a higher classification status. Temporal proximity "may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive." *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004)

(citation and quotation omitted). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 Fed. App'x 579, 580 (6th Cir. 2004). Here, Plaintiff's vague and ambiguous evidence of causation is not "significant enough" to create an issue of fact as to a retaliatory motive. *See Brandon v. Bergh*, No. 2:08-CV-152, 2010 WL 188731, at *1 (W.D. Mich. Jan. 16, 2010) ("Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was 'significant enough.'"). As a result, Plaintiff's claims (1), (4), and (5) fail to satisfy the third element of his retaliation claim, and therefore these claims are dismissed.

### ii. Defendant Volick

Plaintiff asserts that Defendant Volick retaliated against Plaintiff when he wrote a misconduct ticket against him for disobeying a direct order. PageID.34-35, 56, 161. However, because Plaintiff was found guilty of this misconduct ticket (PageID.162), his retaliation claim is barred. *See Burton*, 234 F.3d at *2 (quoting *Henderson*, 29 F.3d at 469 ("A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'")). As a result, Plaintiff's only retaliation claim against Defendant Volick is dismissed.

### iii. Defendant Oja

Plaintiff claims that Defendant Oja retaliated against him when he wrote a misconduct ticket against Plaintiff for being out of place. PageID.36, 57, 153. Plaintiff was found guilty of this misconduct ticket. Accordingly, his retaliation claim against Defendant Oja for this misconduct ticket is dismissed since it is barred. *See Burton*, 234 F.3d at *2 (quoting *Henderson*, 29 F.3d at 469).

*iv. Defendant Conners*

Plaintiff makes two claims of retaliation against Defendant Conners: (1) that Defendant Conners wrote a retaliatory misconduct ticket against Plaintiff on August 29, 2014, and (2) that Defendant Conners wrote a retaliatory misconduct ticket against Plaintiff on December 4, 2014. With regard to the first claim of retaliation arising from the August 29th misconduct ticket, this allegation fails to state a claim for retaliation since Plaintiff was found guilty of the misconduct ticket. *See* PageID.26-28; *see also Burton*, 234 F.3d at *2 (quoting *Henderson*, 29 F.3d at 469).

With regard to the second claim of retaliation (that Defendant Conners wrote a retaliatory misconduct ticket against Plaintiff on December 4th), Plaintiff has satisfied the first prong of his retaliation claim. This is because, in an attempt to read the complaint in the light most favorable to Plaintiff, the Court concludes that by attaching grievances to his complaint, Plaintiff has demonstrated that he engaged in constitutionally protected conduct.

In addition, Plaintiff has sufficiently alleged that Defendant Conners took an adverse action against Plaintiff that would deter a person of ordinary firmness from filing grievances in the future. Specifically, he alleged that Defendant Conners filed a class II misconduct ticket against Plaintiff on December 4, 2014, and that Plaintiff was found not guilty of the ticket at the hearing on this ticket. PageID.35, 57, 184-185. Therefore, the second prong of Plaintiff's retaliation claim is satisfied.

However, Plaintiff has not established the requisite causation to satisfy the third prong of his retaliation claim. Plaintiff merely alleges that because he filed grievances around the time that Defendant Conners wrote this misconduct ticket against him, Defendant Conners must

have written the misconduct ticket in retaliation for the grievances. Plaintiff's vague and ambiguous evidence of causation are not "significant enough" to create an issue of fact as to a retaliatory motive. *See Brandon*, 2010 WL 188731, at *1 ("Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was 'significant enough.'"). As a result, Plaintiff's second claim for retaliation against Defendant Conners is dismissed.

### v. Defendant King

Next, Plaintiff claims that Defendant King wrote a retaliatory misconduct ticket against Plaintiff on June 15, 2015. PageID.16. However, Plaintiff was found guilty of this misconduct ticket, meaning his claim is barred. *See Burton*, 234 F.3d at *2. Consequently, Plaintiff's retaliation claim against Defendant King is dismissed.

### vi. Defendant Eicher

Plaintiff asserts that Defendant Eicher retaliated against Plaintiff by saying that Plaintiff would "pay" for challenging one of Defendant Pawley's misconduct tickets against Plaintiff, and then filing a misconduct ticket against Plaintiff for being out of place. PageID.221. Because Plaintiff was found guilty of the misconduct ticket issued by Defendant Eicher, Plaintiff's retaliation claim is dismissed. *See Burton*, 234 F.3d at *2.

### vii. Defendant Pawley

Plaintiff raises several claims of retaliation against Defendant Pawley, stating that Defendant Pawley retaliated against him by: (1) issuing him two misconduct tickets on September 6 and 7, 2014, (2) issuing a retaliatory misconduct ticket against Plaintiff on October 15, 2014, (3) issuing a retaliatory class II misconduct ticket against Plaintiff on June 1, 2015, and

(4) testifying against Plaintiff at a misconduct hearing on June 12, 2015. With regard to Plaintiff's claims (1), (2), and (3), these are dismissed because Plaintiff was found guilty of those misconduct tickets. *See Burton*, 234 F.3d at *2.

In Plaintiff's claim (4), the Court concludes that regardless of whether Plaintiff has demonstrated the first two prongs of his retaliation claim, his claim fails because he has not demonstrated the requisite causation to satisfy the third prong of his retaliation claim. Specifically, Plaintiff has failed to demonstrate the causal connection between the grievances he filed and the allegedly adverse testimony that Defendant Pawley rendered during his misconduct hearing. Instead, Plaintiff simply alleges that the he filed grievances around the time Defendant Pawley provided his adverse testimony, and therefore Defendant Pawley's testimony must have been in retaliation for Plaintiff's grievance practices. Plaintiff's vague assertions and ambiguous evidence are not significant enough to create an issue of fact as to retaliatory motive in this instance. *See Brandon*, 2010 WL 188731, at *1. Consequently, Plaintiff's claim (4) is dismissed for failure to state a claim.

### viii. Defendant Wink

Plaintiff's final claim of retaliation states that Defendant Wink issued a retaliatory misconduct ticket against Plaintiff on October 24, 2014, for possession of dangerous contraband and possession of stolen property. PageID.46. At his misconduct hearing, Plaintiff was found guilty of possession of stolen property (PageID.303), which means that this claim against Defendant Wink is barred. *See Burton*, 234 F.3d at *2. However, Plaintiff was found not guilty of the possession of dangerous contraband ticket. *See* PageID.303. Assuming (without deciding) that Plaintiff satisfied the first two prongs of his retaliation claim against Defendant Wink with

regard to the possession of dangerous contraband ticket, Plaintiff has failed to satisfy the third prong of his claim—that Defendant Wink filed the misconduct ticket due to Plaintiff's grievance practices. Plaintiff's vague assertion that he filed grievances around the time Defendant Wink issued this misconduct ticket is not sufficient to demonstrate causation for a First Amendment retaliation claim. *See Brandon*, 2010 WL 188731, at *1. As such, Plaintiff's retaliation claim against Defendant Wink is dismissed.

### F. Due Process Claims

Plaintiff's final set of claims is that the misconduct hearing officers (Defendants Mansfield, Durant, Taylor, Watson, Thompson, Isard, Horton, Ormsbee, McLean, Eicher, Butler, Greely, O'Brien, and McCollum) failed to afford him due process during his misconduct hearings by failing to follow the administrative policies and procedures for such hearings (i.e., Plaintiff was not present for the hearings, could not present evidence, could not call witnesses, and could not appeal his convictions).

Plaintiff appears to allege a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings *unless* the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners

are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). In addition, the Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 Fed. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 Fed. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II and III misconduct convictions against Defendants Mansfield, Durant, Taylor, Watson, Thompson, Isard, Horton, Ormsbee, McLean, Eicher, Butler, Greely, O'Brien, and McCollum.

### III. Conclusion

Having conducted the review by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Woods, Horton, Isard, McLean, Durant, McCollum, O'Brien, Thompson, Butler, Greely, Ormsbee, Volick, King, Straka, Eicher, Oja, and Taylor fail to state a claim, and will therefore be dismissed. The Court will serve Plaintiff's Eighth Amendment failure to protect claim against Defendants Conners, Pawley, Wink, Mansfield, and Watson, but will dismiss all other claims against them.

Accordingly, the Court will order the complaint served upon Defendants Conners, Pawley, Wink, Mansfield, and Watson.

An Order consistent with this Opinion will be entered.

Date: __6/28/2016_____                           __/s/ *R. Allan Edgar*_____
                                                        HON. R. ALLAN EDGAR
                                                        UNITED STATES DISTRICT JUDGE